UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| THE NATURE CONSERVANCY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-1096 |
| ) | |
| WILDER CORPORATION OF ) | |
| DELAWARE, ) | |
| ) | |
| Defendant. ) | |

## O R D E R

This matter is before the Court on Plaintiff and Counter-Defendant Nature Conservancy's Motion to Dismiss Counts I, II, and III of the Counterclaims. For the reasons set forth below, Plaintiff's Motion to Dismiss [#44] is GRANTED.

### BACKGROUND

Plaintiff, The Nature Conservancy (the "Conservancy"), entered into an agreement dated February 22, 2000, with Defendant, Wilder Corporation of Delaware ("Wilder") (hereinafter referred to as the "Purchase Agreement"). Pursuant to the Purchase Agreement, Wilder agreed to sell the Conservancy 6,660 acres of land, together with buildings and improvements, in Fulton County, Illinois, for $16,350,000.00. The Conservancy purchased this property for use as a nature preserve. The Purchase Agreement was subsequently amended by an Amendment to Purchase Agreement dated March 7-8, 2000 (the "Amendment"). As provided in the Purchase Agreement, upon closing the Conservancy leased the property back to Wilder via a lease dated April 21, 2000 (the "Lease").

The Conservancy brought this action against Wilder for breach of contract. Plaintiff's Motion for Partial Summary Judgment was granted in part and denied in part. After additional alleged contamination was discovered, the Court allowed Plaintiff to reopen discovery and also allowed Defendant to bring counterclaims for set-off. Plaintiff has now moved to dismiss Counts I, II, and III of the Amended Counterclaims for Set-off. The matter is fully briefed, and this Order follows.

## DISCUSSION

Courts have traditionally held that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief. See Conley v. Gibson, 355 U.S. 41 (1957); Gould v. Artisoft, Inc., 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to relief beyond a speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Hishon v. King & Spalding, 467 U.S. 69 (1984); Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997); M.C.M. Partners, Inc. V. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 969 (7th Cir. 1995); Early v. Bankers Life & Cas. Co., 959 F.2d 75 (7th Cir. 1992).

In its counterclaims, Wilder claims damages from the Conservancy's alleged breach of a provision in the Lease binding the Conservancy to not act in a way that interferes with Wilder's use of the property for its farming operations.  Specifically, Wilder alleges that an agent of the Conservancy removed a pump from service and failed to repair or replace it to operate the levee pumps in an adequate manner, causing flooding of Wilder's fields and damage to its crops (Count I).  Alternatively, Wilder contends that the Conservancy was negligent in its maintenance of the drainage system on the property, causing significant damage to Wilder's crops (Count II).  Wilder further claims that the Conservancy's conduct in failing to repair or replace the pump constituted a violation of the Illinois Drainage Code, 70 ILCS 606 1-1 et seq. (Count III).  Finally, Wilder alleges breach of an oral contract to pay for its labor and materials in repairing a levee at the request of the Conservancy (Count IV).

Plaintiff argues that Counts I, II, and III must be dismissed based on an exculpatory clause in the Lease.  Paragraph 12 of the Lease provides:

> INSURANCE/LIABILITY: The Lessee agrees to maintain public liability and property damage insurance with a reliable company covering the Lessee's activities on or use of the Property.  This insurance shall be in an amount of not less than $500,000 for injury to any one person and $200,000 for property damage.  This insurance protection shall include the Conservancy as an additional insured and may be carried under a blanket policy.  At least ten days before the start of the term of this lease and at least ten days before the start of each Renewal Term, the Lessee shall furnish the Conservancy with a certificate or other evidence establishing that coverage is in force.
>
> The Lessee agrees to bear the **full risk of any loss or damage** to persons or property, **including the loss or damage of the Lessee's** property, **crops**, or livestock occurring on the Property or as a result of the Lessee's use of or activity on the Property.  The Lessee also agrees to

> **indemnify and hold the Conservancy harmless from any and all claims**, expenses and liabilities in connection with the foregoing.

Agricultural Lease Cash Rent, ¶ 12 (emphasis added).

Wilder responds that its claims are unaffected by the indemnification clause in the Lease, as the clause does not expressly indemnify or exculpate the Conservancy from its own negligence, breaches of contract, or statutory violations. While this is an accurate observation factually, Illinois law establishes that a specific reference to negligence is not required. Calarco v. YMCA of Greater Metropolitan Chicago, 149 Ill.App.3d 1037, 1042-43 (2nd Dist. 1986); Duffield v. Marra, Inc., 166 Ill.App.3d 754, 520 N.E.2d 938, 945 (1988). An agreement can require indemnification for the indemnitee's own negligence if the intention to do so is expressed in clear, explicit and unequivocal language. Id.; Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp., 395 Ill. 429, 433 (Ill. 1946).

An indemnity agreement is a contract and is subject to the rules of contract interpretation. Virginia Surety Co. v. Northern Insurance Co. of New York, 224 Ill.2d 550, 556 (Ill. 2007). The parties' intent must be discerned from the contract language, and where the contract language is unambiguous, it should be given its plain and ordinary meaning. Id.

In Buenz v. Frontline Transportation Co., 227 Ill.2d 302, 307 (7th Cir. 2008), the Illinois Supreme Court was presented with the question of whether an agreement to "indemnify . . . against, and hold . . . harmless for any and all claims, demands, actions, suits, proceedings, costs, expenses, damages, and liability . . ." was explicit enough to signify the parties' intention that the indemnitor indemnify the indemnitee for claims

resulting from the indemnitee's own negligence. The court discussed its prior holding in Westinghouse, which contained an agreement "to indemnify and hold the owner . . . wholly harmless from any damages . . . ", noting that the agreement in that case did not provide indemnification for the indemnitee's own negligence because language in that agreement limited the broad language to "any acts or omissions by the [indemnitor]." Id., at 313.

This discussion clarified that without such limiting language, an agreement to indemnify and hold harmless from and against any and all claims, actions, damages, liability, and expense could provide indemnification even for the indemnitee's own negligence. Id., at 313-14. "[W]hen an indemnity contract expressly limits itself to the negligence of the indemnitor, courts will not strain, simply because the contract also contains 'any and all' language, to read into that contract indemnification for an indemnitee's own negligence." Id., at 315-16. That being said, the Illinois Supreme Court found that the mere presence of the phrase "any and all" in an agreement is insufficient to determine whether the particular contract provides indemnification for the indemnitee's own negligence and directed that the phrase must be read in context. Id., at 316.

With this in mind, the court then examined the agreement in Buenz. The Illinois Supreme Court concluded that the agreement in that case did not contain any limiting language "to suggest that the indemnity provided is not intended to cover claims resulting from [the indemnitee's] own negligence." Id., at 318. Thus, the agreement was found to clearly and explicitly provide indemnification for the indemnitee's own negligence pursuant to the context of the contract terms. Id.

In interpreting Illinois law, the Seventh Circuit has likewise found that broad language in an indemnification agreement referencing "any and all liability" or agreeing "to

completely indemnify and hold harmless . . . against any liability or expense . . . arising out of any losses, claims, damages or injury" is sufficiently clear and explicit to cover the indemnitee's own negligence. Halverson v. Campbell Soup Company, 374 F.2d 810, 813 (7th Cir. 1967); Chicago Housing Authority v. Federal Security, Inc., 161 F.3d 485, 488 (7th Cir. 1998), *citing* Duffield, 520 N.E.2d at 944-45.

Here, ¶ 12 of the Lease Agreement contains the broad language of agreeing "to bear the full risk of any loss or damages to persons or property," as well as an agreement to indemnify and hold harmless from "any and all claims, expenses, and liabilities" without any limiting language suggesting that the indemnity provided is not intended to cover claims resulting from the Conservancy's own negligence. Accordingly, pursuant to the applicable law discussed above (none of which is discussed by Wilder), the Court finds that the express language of the indemnification clause entered into between the Conservancy and Wilder clearly and explicitly provides indemnification for the Conservancy's own negligence pursuant to the terms of the contract, and Wilder's argument to the contrary is rejected. Accordingly, Count II of the Amended Counterclaims must be dismissed.

Furthermore, given the broad and inclusive agreement to indemnify and hold harmless from "any and all claims, expenses and liabilities" and the lack of any limiting language, the Court finds no reason why the same result should not follow with respect to the claims for breach of contract (Count I) and Violation of Drainage Code (Count III). As Wilder has cited no authority compelling any other result, Counts I and III are dismissed as well.

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion to Dismiss Counts I, II, and III of the Counterclaims for Set-Off [#44] is GRANTED.

ENTERED this 15th day of December, 2008.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
