**E-FILED**
Tuesday, 23 June, 2009 02:17:37 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

THE NATURE CONSERVANCY, )
Plaintiff, )
v. ) Case No. 06-1096
WILDER CORPORATION OF DELAWARE, )
Defendant. )

# ORDER

This matter is before the Court on Defendant's Motion for Reconsideration. For the reasons set forth below, the Motion for Reconsideration [#73] is DENIED.

## DISCUSSION

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." Caisse Nationale de Credit v. CBI Industries, 90 F.3d 1264, 1269 (7th Cir. 1996). Furthermore, it is not appropriate to argue matters that could have been raised in prior motions or rehash previously rejected arguments in a motion to reconsider. Id. at 1270.

Wilder seeks reconsideration of the portion of the Court's May 27, 2009, Order denying its affirmative defense of laches and granting summary judgment in favor of the Conservancy with respect to its claim for damages concerning the remediation of petroleum contamination in the area south of the Pump House. Wilder states in its Motion that the Court concluded "that the 'great weight of authority' in Illinois holds that laches is an equitable defense that cannot be applied to an action at law" and argues as if the Court stopped there and ignored the case law backing away from a mechanical application of the

distinction between law and equity. To the contrary, the Court readily agrees that the distinction between law and equity is increasingly irrelevant. With all due respect, Wilder has taken one piece of the Court's Order out of context and misconstrued the holding of the Court.

The Court did note the Seventh Circuit's decision in Maksym v. Loesch, 937 F.2d 1237, 1248 (7th Cir. 1991), which recognized that at that time, the great weight of authority in Illinois held that laches is a defense only in equity cases. 937 F.2d at 1248, *citing* People ex rel. McCoy v. Sherman, 462 N.E.2d 817 (1984); Mother Earth, Ltd. v. Strawberry Camel, Ltd., 390 N.E.2d 393 (1979). However, the Court then discussed the more recent Illinois cases in which "numerous exceptions have been forged to allow the defense in cases at law, such as ejectment, mandamus, certiorari, quo warranto, and declaratory judgment." 5/27/09 Order, *citing* Bays v. Matthews, 440 N.E.2d 142, 145 (5th Dist. 1982); Bill v. Board of Education of Cicero School Dist. 99, 812 N.E.2d 604, 610 (1st Dist. 2004); Lee v. City of Decatur, 627 N.E.2d 1256, 1259 (4th Dist. 1994); Summers v. Village of Durand, 653 N.E.2d 272, 276 (2nd Cir. 1994); Szymanski v. Glen of South Barrington Property Owners Association, 689 N.E.2d 272, 274 (1st Dist. 1997). Thus, the Court noted the trend of extending the application of laches into cases at law.

The Court then noted the observation of the Illinois Appellate Court in Bill that cases extending the application of the laches doctrine involved an "equity-like" or "quasi-equitable" claim, where equitable considerations are at the heart of a claim actually based in law, or a case at law seeking money damages in the form of back pay or in lieu of reinstatement. The basis of the Court's holding was that none of the cases cited by either party or discovered independently by the Court "supported a finding that the Illinois courts

would condone the application of a laches defense in a pure case at law ***such as this, that is a breach of contract case seeking nothing but money damages.***" 5/27/09 Order at 20. The Court did not summarily hold that laches could not be applied to cases at law. Rather, the Court simply found no authority indicating that it would be proper to apply laches under the particular facts of this case.

In seeking reconsideration, Wilder cites Sundance Homes, Inc. v. County of DuPage, 195 Ill.2d 257, 270 (Ill. 2001). Specifically, Wilder points to a portion of the opinion in which the Illinois Supreme Court states, "However, laches analysis is no longer mechanically applied to all actions denominated equitable, particularly where such an application would frustrate the intent of the legislature." Id., at 271. This is in no way inconsistent with the Court's ruling, particularly as Sundance Homes was an action for mandamus, declaratory judgment, and restitution/assumpsit/unjust enrichment. These are precisely the types of claims addressed in the Illinois courts' extensions of the laches doctrine and acknowledged by this Court. The Court further notes that in the paragraph immediately preceding the paragraph cited above, the Illinois Supreme Court stated:

> Thus, for better or worse, depending upon one's view of the importance and continuing relevance of the law-equity dichotomy, how we categorize various actions tends to control the limitation schemes applied to them: generally, statutes of limitation apply to actions at law; laches is the doctrine of limitation applied to actions in equity.

Id. This would at a minimum suggest that there are instances where the nature of the action is not completely meaningless in this inquiry. *See also*, Raintree Homes, Inc. v. Village of Long Grove, 209 Ill.2d 248, 260 (Ill. 2004) (noting that in deciding

Sundance Homes, the Supreme Court first examined the cause of action in the complaint and after finding it to be " sufficiently legal in nature," the court found it appropriate to " circumscribe the reach of the equitable defense of laches in favor of the statute of limitations, a legal defense." )

The Court is not unsympathetic to the fact that the Conservancy is now seeking additional damages from Wilder that have only been disclosed during the last year and arguably could have been discovered at the time of the environmental inspection in 2000. That being said, the Court's sympathy cannot change the fact that Wilder affirmatively represented that any storage tanks on the premises were in full compliance with applicable statutes, ordinances and regulations, and falsely represented that any tanks had not resulted in the release of any hazardous or toxic substance into the environment. Wilder also agreed to indemnify and hold the Conservancy harmless from any loss or liability relating to Wilder's representations and that this agreement would survive the closing and expiration of the Lease term. Wilder further agreed to clean up and properly dispose of any soil contaminated with diesel fuel, motor oil, etc., and conduct post-removal testing.

Applying laches under the particular facts of this case would essentially mean using the doctrine to rewrite the terms of a valid contract to excuse Wilder from complying with the obligations that it voluntarily undertook in entering into the various agreements. It would eliminate the Conservancy's cause of action for breach of contract even though the Conservancy fulfilled its end of the bargain, and the limitations period for seeking a remedy from Wilder has not yet expired. It would also wipe out any consequences for Wilder's false representation that there had been no release of any hazardous or toxic substances, material, or waste into the environment in the area south of the Pump House, eliminating

Wilder's liability for money damages under that contract for the cost of cleaning up this area following its default.

Thus, the Court finds that its original ruling was not in error, and Wilder's Motion for Reconsideration [#73] is DENIED.

ENTERED this 23rd day of June, 2009.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge